Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK LAVERY,<br><br>    Plaintiff,<br><br>    v.<br><br>SHARPSPRING, INC., RICHARD A. CARLSON, STEVEN A. HUEY, SAVNEET SINGH, DAVID A. BUCKEL, and SCOTT MILLER,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Patrick Lavery ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against SharpSpring, Inc. ("SharpSpring" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed acquisition (the "Proposed Transaction") of SharpSpring by Constant Contact, Inc. ("Constant Contact") and Groove Merger Sub, Inc., a direct wholly-owned subsidiary of Constant Contact.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of SharpSpring common stock.

7. Defendant SharpSpring operates as a cloud-based marketing technology company worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "SHSP."

8. Defendant Richard A. Carlson ("Carlson") is Chief Executive Officer, President, and a director of the Company.

9. Defendant Steven A. Huey ("Huey") is Chairman of the Board of the Company.

10. Defendant Savneet Singh ("Singh") is a director of the Company.

11. Defendant David A. Buckel ("Buckel") is a director of the Company.

12. Defendant Scott Miller ("Miller") is a director of the Company.

13. Defendants Carlson, Huey, Singh, Buckel, and Miller are collectively referred to herein as the "Individual Defendants."

14. Defendants SharpSpring and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

15. On June 22, 2021, Constant Contact announced that it had signed a definitive agreement to acquire SharpSpring in an all-cash transaction. Under the terms of the agreement, Constant Contact will acquire all the outstanding common stock of SharpSpring for $17.10 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

> **Clearlake Capital and Siris-Backed Constant Contact Agrees to Acquire SharpSpring**
>
> Strategic acquisition to maximize growth and audience engagement for small businesses
>
> NEWS PROVIDED BY
> **Constant Contact**
> Jun 22, 2021, 09:30 ET
>
> WALTHAM, Mass. and GAINESVILLE, Fla., June 22, 2021 /PRNewswire/ -- Constant Contact, an established leader in online marketing, backed by Clearlake Capital Group, L.P. (together with its affiliates, "Clearlake") and Siris Capital (together with its affiliates, "Siris"), today announced it has signed a definitive

3

agreement to acquire SharpSpring, Inc. ("SharpSpring") (NASDAQ: SHSP) in an all cash transaction valued at approximately $240 million including outstanding indebtedness.

Under the terms of the agreement, which has been unanimously approved by the members of SharpSpring's Board of Directors, Constant Contact will acquire all the outstanding common stock of SharpSpring for $17.10 per share in cash. The purchase price represents a 21% premium over SharpSpring's closing share price of $14.11 as of June 21, 2021. The transaction is expected to close in the third quarter of 2021 subject to customary closing conditions including a SharpSpring stockholder approval.

SharpSpring is a cloud-based revenue growth and marketing automation platform that improves the effectiveness of small business's (SMBs) marketing strategy. Designed for SMBs, and often delivered by digital marketing agencies, SharpSpring generates leads, improves conversions to sales, and drives higher returns on marketing investments. The integration of SharpSpring will give Constant Contact's SMB clients the ability to easily and successfully engage customers throughout their journey, helping clients deliver better marketing-driven results.

*   *   *

JMP Securities LLC is acting as exclusive financial advisor and Godfrey & Kahn, S.C. is acting as legal counsel to SharpSpring, Inc. Lazard is acting as financial advisor to Constant Contact and Sidley Austin LLP is acting as legal counsel to Constant Contact.

**About Constant Contact**
Constant Contact, an established leader in online marketing, simplifies the complex task of marketing your business, so you can achieve real results and sell more online. Whether it's setting up a website and online store, leveraging social and search features to get new customers, or sending great-looking emails with the power to drive more sales, we combine the right tools and advice to help get the results you want. Plus, our award-winning team of marketing advisors is there for each customer, every step of the way. For more information, visit: www.constantcontact.com.

**About SharpSpring, Inc.**
SharpSpring, Inc. (NASDAQ: SHSP) is a rapidly growing, highly-rated, global and affordable revenue growth platform delivered via a cloud-based Software-as-a-Service (SaaS) solution. More than 10,000 businesses around the world rely on SharpSpring platforms to generate leads, improve conversions to sales, and drive higher returns on marketing investments. Known for its innovation, open architecture and free customer support, SharpSpring offers flexible contracts at a

4

fraction of the price of competitors making it an easy choice for growing businesses and digital marketing agencies. Learn more at sharpspring.com.

**About Clearlake**
Founded in 2006, Clearlake Capital Group, L.P. is an investment firm operating integrated businesses across private equity, credit and other related strategies. With a sector-focused approach, the firm seeks to partner with experienced management teams by providing patient, long term capital to dynamic businesses that can benefit from Clearlake's operational improvement approach, O.P.S.® The firm's core target sectors are technology, industrials, and consumer. Clearlake currently has approximately $39 billion of assets under management, and its senior investment principals have led or co-led over 300 investments. The firm has offices in Santa Monica and Dallas. More information is available at www.clearlake.com and on Twitter @ClearlakeCap.

**About Siris**
Siris is a leading private equity firm that invests primarily in mature technology and telecommunications companies with mission-critical products and services, facing industry changes or other significant transitions. Siris' development of proprietary research to identify opportunities and its extensive collaboration with its Executive Partners are integral to its approach. Siris' Executive Partners are experienced senior operating executives that actively participate in key aspects of the transaction lifecycle to help identify opportunities and drive strategic and operational value. Siris is based in New York and Silicon Valley and has raised nearly $6 billion in cumulative capital commitments. www.siris.com.

16. On July 30, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

17. The Proxy Statement, which recommends that SharpSpring shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) SharpSpring's financial projections; (ii) the financial analyses performed by SharpSpring's financial advisor, JMP Securities LLC ("JMP"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving JMP.

18. The omission of the material information (referenced below) renders the following

sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Merger; Recommendation of the Board of Directors; (ii) Opinion of JMP Securities LLC; (iii) Certain Financial Projections.

19. Unless and until the material misstatements and omissions (referenced below) are remedied before the August 25, 2021 shareholder vote on the Proposed Transaction, SharpSpring shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning SharpSpring's Financial Projections**

20. The Proxy Statement omits material information concerning SharpSpring's financial projections.

21. With respect to the "financial forecasts" of the Company, the Proxy Statement fails to disclose: (1) all line items underlying (i) Net Revenue, (ii) Gross Profit, (iii) Operating Income; (iv) Adjusted EBITDA, and (v) Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

22. The Proxy Statement also fails to disclose the inputs, reasons, and bases underlying the following utilized material assumptions: (1) an increase to 125 new sales by the end of 2021; (2) the long-term customer attrition of approximately 2.84%; and (3) the long-term year-over-year net revenue retention rate of approximately 90%.

23. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such

information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

24. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

25. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

   2. **Material Omissions Concerning JMP's Analyses**

26. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by JMP.

27. The Proxy Statement fails to disclose the following concerning JMP's "*Discounted*

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 2, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

*Cash Flow Analysis*": (1) the after-tax free cash flows of SharpSpring as of March 31, 2021, and all underlying line items; (2) the basis for JMP's assumptions that SharpSpring would incur zero taxes during the length of the projections period due to accumulation of deferred tax assets; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 11.5% to 13.5%, and (ii) terminal revenue multiples ranging from 3.5x to 5.0x; (4) the terminal value at the end of the forecast period; (5) the Company's net debt; and (6) the Company's diluted shares.

28. The Proxy Statement fails to disclose the following concerning JMP's "*Selected Transactions Analysis*": (1) the date on which each selected transaction closed; and (2) the value of each selected transaction.

29. The valuation methods, underlying assumptions, and key inputs used by JMP in rendering its purported fairness opinion must be fairly disclosed to SharpSpring shareholders. The description of JMP's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, SharpSpring shareholders are unable to fully understand JMP's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving JMP**

30. The Proxy Statement omits material information concerning potential conflicts of interest involving JMP.

31. The Proxy Statement fails to disclose the timing and nature of the past services JMP and/or its affiliates provided Clearlake Capital Group, L.P., Siris Capital, and/or their affiliates, including the amount of compensation JMP received or expects to receive for providing each

service within the past two years of the date of its fairness opinion.

32. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

33. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

36. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and

misleading Proxy Statement.

37. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

38. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned

company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.       Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.       In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.       Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.       Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.       Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 2, 2021                                          Respectfully submitted,

                                                               **HALPER SADEH LLP**

                                                               By: /s/ Daniel Sadeh
                                                               Daniel Sadeh, Esq.
                                                               Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                               667 Madison Avenue, 5th Floor
                                                               New York, NY 10065
                                                               Telephone: (212) 763-0060
                                                               Facsimile: (646) 776-2600
                                                               Email: sadeh@halpersadeh.com
                                                                          zhalper@halpersadeh.com

*Counsel for Plaintiff*